DONALD RICHARDSON, APPELLANT, v. LOUIS NICKOLOPOU-
LOS, CHAIRMAN OF THE NEW JERSEY STATE PAROLE
BOARD, RESPONDENT.

Argued December 1, 1987—Decided April 13, 1988.

*Daniel V. Gautieri,* Assistant Deputy Public Defender, ar-
gued the cause for appellant (*Alfred A. Slocum,* Public Defend-
er).

*Stuart J. Lieberman,* Deputy Attorney General, argued the
cause for respondent (*W. Cary Edwards,* Attorney General of

New Jersey, attorney; *Michael R. Clancy,* Deputy Attorney General, of counsel).

The opinion of the Court was delivered by

O'HERN, J.

Once again, we must reconcile anomalies and ambiguities that inhere in the Code of Criminal Justice (Code), *N.J.S.A.* 2C:1–1 to 98–4, occasioned by the Legislature's selective inclusion and omission of provisions of its conceptual source, the Model Penal Code (MPC).

This appeal concerns the meaning of *N.J.S.A.* 2C:44–5b(2), which governs sentencing at different times for multiple offenses. This provision requires that when a defendant who has been sentenced to imprisonment is subsequently sentenced to another term for an offense committed prior to the imposition of the former sentence (other than an offense committed while in custody), the defendant shall be "credited" at the time of the second sentence for so much of the term of imprisonment as has been served on the prior sentence. This statutory credit is not to be confused with the usual credit for presentence time, referred to as "jail credits," which is required to be applied in reduction of sentences under *Rule* 3:21–8. The Attorney General refers to the 2C:44–5b(2) credit as "gap-time credit," since it applies to the gap between the sentences. We shall use that expression to distinguish such credit from the *Rule* 3:21–8 "jail credit," the usual credit for presentence time.

*N.J.S.A.* 2C:44–5b(2) is found in the chapter of the Code dealing with the authority of courts in sentencing for multiple offenses. The text in which it is found is:

a. *Sentences of imprisonment for more than one offense.*

When multiple sentences of imprisonment are imposed on a defendant for more than one offense, including an offense for which a previous suspended sentence or sentence of probation has been revoked, such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence, except that:

(1) The aggregate of consecutive terms to a county institution shall not exceed 18 months; and

(2) Not more than one sentence for an extended term shall be imposed.

b. *Sentences of imprisonment imposed at different times.*

When a defendant who has previously been sentenced to imprisonment is subsequently sentenced to another term for an offense committed prior to the former sentence, other than an offense committed while in custody:

(1) The multiple sentences imposed shall so far as possible conform to subsection a. of this section; and

(2) Whether the court determines that the terms shall run concurrently or consecutively, the defendant shall be credited with time served in imprisonment on the prior sentence in determining the permissible aggregate length of the term or terms remaining to be served. [*N.J.S.A.* 2C:44–5a, b.]

As we have observed on prior occasions, the New Jersey Code, during its course of legislative evolution, moved from a "rehabilitative" sentencing philosophy to a "just desert" sentencing philosophy. The ambiguity that we address here arises from the New Jersey Code's omission of a Model Penal Code provision that gives meaning to the "gap-time" credit when sentencing for multiple offenses on different occasions.

The original sentencing philosophy of the Model Penal Code (MPC) was that sentencing be for short and certain periods of time. *See State v. Roth*, 95 *N.J.* 334, 346–47 (1984). Hence, in dealing with sentencing for multiple offenses, the Model Penal Code established two basic principles. First, the decision whether to impose concurrent or consecutive sentences was granted to the sentencing court rather than to the Legislature. The second basic principle was "a limit on the cumulation of consecutive sentences. The occasional abuse that results in sentences built up to the level of 100 years or more illustrates the problem." *Model Penal Code Commentary* § 7.06 at 272 (footnote omitted).

To limit such cumulation, MPC § 7.06 restricts the sentencing authority of courts in two ways:

(1) by providing that when sentences for multiple offenses are imposed on *one* occasion, the maximum sentence to be imposed not exceed the "longest extended term authorized for the highest grade and degree of crime for which any of the sentences was imposed"; and

(2) by providing that when sentences for multiple offenses are imposed on *different* occasions,

(a) the overall outer limit *again* not exceed the extended term for the longest offense, and that

(b) credit be allowed on sentences for crimes committed prior to the first sentence for time served on the prior sentence.

The MPC Commentary explains these provisions as follows:

The paradigm [example] at which the subsection is aimed occurs when a defendant is tried, convicted and sentenced to imprisonment and subsequently is tried and convicted of a second offense committed prior to the imposition of the first sentence. In that event there is no basis for enlarging the limits on consecutive sentences that would otherwise be applicable had the two offenses been tried at the same time. The court is still free, therefore, to impose concurrent or consecutive sentences as the case may warrant, but is enjoined * * * to conform to the limits [of not exceeding the extended term for the most serious offense] so far as possible. Many recently enacted and proposed codes adopt a similar approach. [*Model Penal Code Commentary* § 7.06 at 278 (footnote omitted).]

The Code Commentary refers to the adoption of *N.J.S.A.* 2C:44-5 as "similar to MPC," but there was a striking omission in the translation from the MPC to the New Jersey Code in that our Code has no limit on the aggregate of consecutive terms. (See Appendix.) We dealt with this omission in *State v. Yarbough*, 100 *N.J.* 627 (1985), *cert. denied*, 475 *U.S.* 1014, 106 *S.Ct.* 1193, 89 *L.Ed.*2d 308 (1986), but only in the context of sentences for multiple offenses imposed on one occasion, exclusive of murder sentences; there we sought to establish guidelines for courts in the exercise of sentencing discretion.

What the MPC had in mind, then, in speaking of a "credit" was in fact a limit on the maximum term of imprisonment that could be imposed on the sentencing occasion, not a declaration that the time served on the prior sentence be regarded as time served on the current sentence.

What meaning, then, should we ascribe to this provision in our Code? The question in this case has been phrased as whether the "gap-time" credit comes off the front or the end of the sentence. In fact, the defendant here seeks to have the time served on his prior sentence double-counted as though served as part of the judicial parole ineligibility bar expressly intended by the sentencing court to be consecutive to the prior

sentence. (See a bar chart of the sentence alternatives, *infra* at 249) Defendant's interpretation would, in some cases, wipe out any judicial or statutory parole bar on a sentence for a second offense. That interpretation is not supported by the legislative history of the provision; it conflicts with the plain language of the statute that requires that the time served on the later offense be "credited" to the "permissible aggregate length of the term or terms remaining to be served"; and it also conflicts with the sentencing goals of the Code.

We therefore affirm the judgment of the court below, which limited the effect of *N.J.S.A.* 2C:44–5b(2) to an overall restraint on the base term of the aggregated sentences.

I

Before addressing the facts of this case, a few observations are in order about the Code's overall legislative framework. The critical consequence of whether the "gap-time" credit is to be applied to the front or to the end of the sentence arises from the interrelationship of the Code of Criminal Justice, *N.J.S.A.* 2C:1–1 to 98–4, and the Parole Act of 1979, *N.J.S.A.* 30:4–123.45 to –123.69. We had occasion to review the interrelationship between the two acts in *New Jersey State Parole Bd. v. Byrne*, 93 *N.J.* 192 (1983), and *In re Parole Application of Thomas Trantino*, 89 *N.J.* 347 (1982).

Chronologically, the Code of Criminal Justice was passed first, *L.* 1978, *c.* 95 (effective Sept. 1, 1979), and the Parole Act second, *L.* 1979, *c.* 441 (effective May 21, 1980). Of both, we have observed that

> [t]he current Code and Parole Act sharply contrast with the previous scheme. They impose a new sentencing structure in which the sentence ranges for most offenses are more clearly drawn. * * * Moreover, although fitness for parole remains a determination for parole authorities to make, parole *eligibility* is now a function of the sentence received. In effect, setting the parole eligibility date has become a judicial responsibility to be exercised at the time of sentencing and within the bounds set by the Legislature. The courts can require offenders

to serve mandatory minimum terms before they can be considered for parole. *See, e.g., N.J.S.A.* 2C:11–3(b); *N.J.S.A.* 2C:43–6.[1]

Our State's parole process has also undergone significant changes. In recognition of the more definite and severe sentences provided by the Code, the Legislature reduced the discretion involved in parole decisions. * * * Hence, the new statute provides only that a prisoner "shall be released on parole at the time of the parole eligibility, unless * * * there is a substantial likelihood that the inmate will commit a crime under the laws of this State if released on parole at such time." *N.J.S.A.* 30:4–123.53(a). The legislation shifts the burden to the State to prove that the prisoner is a recidivist and should not be released. [*New Jersey Parole Bd. v. Byrne, supra,* 93 *N.J.* at 204–05 (emphasis in original) (footnotes omitted).]

It will be seen at once that the primary parole eligibility date is of critical significance for the prisoner. Ordinarily, a prisoner becomes primarily eligible for parole after serving one-third of the sentence less appropriate credits or after serving the mandatory minimum. *N.J.S.A.* 30:4–123.51(a). On this point, one provision of each act is particularly relevant:

(1) the provision of the Code that allows judges to set parole ineligibility terms, *N.J.S.A.* 2C:43–6b, and

(2) the correlative provision of the Parole Act requiring that the primary parole eligibility dates established therein may not serve to reduce a "judicial or statutory mandatory minimum term," and that as well "commutation and work credits shall not in any way reduce" such judicial or statutory parole bars. *N.J.S.A.* 30:4–123.51(a).

A final observation regarding sentencing is that the "gap-time" credit of *N.J.S.A.* 2C:44–5b(2) refers to the "aggregate length of the term or terms remaining to be served." Aggregation of sentences is both a judicial and a parole function. With respect to aggregation in the context of the calculation of either consecutive or concurrent terms, the Code states:

(1) When terms of imprisonment run concurrently, the shorter terms merge in and are satisfied by discharge of the longest term.

(2) When terms of imprisonment run consecutively, the terms are added to arrive at an aggregate term to be served equal to the sum of all terms. [*N.J.S.A.* 2C:44–5e.]

---

[1]In addition to judicial parole bars, the Legislature has created certain mandatory minimum sentences that are statutory bars to parole. *See, e.g., N.J.S.A.* 2C:43–6c (Graves Act), *N.J.S.A.* 2C:35–5 (Comprehensive Drug Reform Act of 1986, *L.* 1987, *c.* 106).

Aggregation in the parole setting is to be done "for the purpose of determining the primary parole eligibility date" pursuant to regulations to be adopted by the Board. *N.J.S.A.* 30:4–123.51h. Again, without consideration of good time and work credits, the regulations provide that, in general, the parole eligibility term of a *consecutively* imposed jail term shall be *added* to the parole eligibility term of the prior sentence to arrive at the primary parole eligibility date under the aggregated sentences; the parole eligibility term for a sentence *concurrently* imposed is laid alongside the term for the prison sentence, so that the parole eligibility date under the aggregated sentences is the later of the two parole eligibility dates. *N.J. A.C.* 10A:71–3.2(d), (e).

## II

The situation here involves a November 1984 sentence (S2) for receipt of a stolen car. That offense took place on February 23, 1983. The sentence of five years with a two-and-one-half year parole bar was made consecutive to a December 1983 sentence (S1) of three years for violation of probation, based on an underlying conviction of receipt of stolen property.

Richardson appealed his second conviction on a variety of grounds. The Appellate Division affirmed this conviction, but noted that appellant was entitled to receive 336 days of "gap-time" credit toward his aggregate sentence on the two indictments. *State v. Richardson,* 208 *N.J.Super.* 399 (1986), *certif. denied,* 105 *N.J.* 552 (1986) (hereafter *Richardson I*). Richardson sought certification on a variety of issues, but not on the meaning or effect of the credit. The State initially filed a cross-petition on that point that was later withdrawn. Richardson's original petition for certification was denied by this Court. 105 *N.J.* 552 (1986). Thereafter, the trial court amended its judgment of conviction on the November 1984 car theft sentence: "["gap-time"] credit of 336 days is given against the eight-year aggregated term on [the two] indictments."

*N.J.S.A.* 2C:44–5e(2) requires that consecutive terms be added to arrive "at an aggregate term to be served equal to the sum of all terms." *N.J.A.C.* 10A:71–3.2(d) provides, then, that the two parole eligibility terms are to be added to each other. Initially, the parole board concluded that the 336 days should serve to reduce the parole ineligibility term on the second offense and scheduled a parole release hearing in late 1986. Since defendant would be primarily eligible for parole in one year on S1, an approximate one-year "gap time" credit on S2's parole bar would result in a total of about two and one-half years of "real time"; thus, the December 1986 parole hearing. The Board later reversed itself, and on December 20, 1986, advised that it would not apply the 336 days credit toward defendant's parole eligibility date. Instead the Board terminated the parole release hearing, basing its decision on its interpretation of *Richardson I.* In the Board's view, the "gap time" credits of 2C:44–5b(2) apply only to the aggregate term and do not reduce a prisoner's judicial parole-ineligibility date.

A bar chart of the sentences, disregarding commutation or work credits, may help to display the two competing theories. (We must realize, however, that since the primary parole eligibility date determines real time served, the real-time chart of parole dates will be collapsed. The parole ineligibility term on the second consecutive sentence would effectively begin to run immediately after the primary parole eligibility date of the first sentence.)

In early 1987, the defendant sought emergency relief to have the credits applied to the two-and-one-half-year parole bar, thus making him immediately eligible for parole. Citing its decision in *Richardson I*, the Appellate Division, in a brief unreported opinion, affirmed the Parole Board's decision, stating that the credits applied pursuant to *N.J.S.A.* 2C:44–5b(2) are not to be used to compute primary parole eligibility. We granted certification to review the question. 108 *N.J.* 181 (1987).

### III

Preliminarily, we note that defendant argues that *Richardson I* simply did not resolve the application of "gap-time" credits to a judicial parole bar.[2] In his brief defendant states

---

[2] The defendant's brief refers to the Appellate Division's treatment of the issuance of jail credits. Again, we emphasize the difference between "jail credits" and "gap-time" credits. County jail credits reflect the reality that a defendant who is not admitted to bail for want of property suffers detriment compared to a person of property, who can obtain bail and thus his freedom.

that *Richardson I* "never considered or discussed the issue of parole eligibility." We disagree. Nothing could be clearer. The *Richardson I* court said itself:

> The primary question presented is whether § 5b(2) should be construed to give defendant a credit for time served on a previous sentence so as to reduce a term of parole ineligibility imposed for a separate offense at a subsequent sentencing. [208 *N.J.Super.* at 402.]

The court concluded that:

> [D]efendant's strained and unwarranted construction of the statute would go well beyond the legislative intent of allowing a credit *only* "in determining the permissible aggregate length of the term or terms remaining to be served" following aggregation. *N.J.S.A.* 2C:44–5b(2). Defendant's interpretation, if adopted, would dilute the intended purpose of other statutes permitting consecutive sentences (*see N.J.S.A.* 2C:44–5a and *State v. Yarbough* [100 *N.J.* 627, 498 *A.2d* 1239], *supra,*) and terms of parole ineligibility (*see N.J.S.A.* 2C:11–3b and c; 2C:14–6; 2C:43–6b and c; and 2C:43–7b and c). Defendant would have us make no distinction between *N.J.S.A.* 2C:44–5b(2) and credits for presentence custody under *R.* 3:21–8. He seeks to have the 336 days ["gap-time"] credited in such a way as to reduce the two and one-half years of parole ineligibility in the same manner as the three days of presentence custody [jail-time] spent before he was released on bail on the present offense. To accept his contention would require us to violate a well established principle that a defendant is entitled only to credit for time of confinement or detention served for a particular offense. *See State v. Allen*, 155 *N.J.Super.* 582, 584 (App.Div.1978); *State v. Council*, 137 *N.J.Super.* 306 (App.Div.1975). [208 *N.J.Super.* at 412–13.]

The Appellate Division reasoned further that by requiring consideration of aggregation, *N.J.S.A.* 2C:44–5b(2) requires that sentencing courts focus on "the true meaning of the sentence which they impose," since the parole release time associated with a single sentence is in many cases "the real sentence." 208 *N.J.Super.* at 413–14.

Before us, the centerpiece of defendant's argument is the putative unfairness that might result if the interpretation

---

Such an unpropertied person would receive *double punishment* since the judicial sentence would be cumulative to jail time spent by a presumably innocent but poor defendant. The "gap-time" credit does not seek to cure double punishment—by definition, the defendant is serving the time not because of his poverty but because of the other offense. As we have seen, what the statute sought to address was an overall limit on sentencing for multiple offenses.

adopted in *Richardson I* frustrated the goals of a sentencing judge who believed that the truly concurrent disposition of the two charges would serve the ends of justice. The defendant poses a series of hypotheticals showing how similarly situated defendants sentenced at differing times would reach their primary parole eligibility date at different times.[3] Although theoretical dangers may exist, the cure may be worse than the problem, and may create converse situations of sentence disparity. A judge believing that a consecutive parole bar is necessary to reflect adequately the need to fashion an appropriate sentence for the occasion before him would be effectively prevented from making such a disposition. In essence, such defendants would have committed free crimes. Often, it is not prosecutorial delay but rather defense strategy or the availability of defense counsel or witnesses that dictates the order of dispositions. Any delay can be dealt with in the sentencing process without tying the hands of judges in other situations that may call for truly consecutive terms.

We believe that the sentencing flexibility provided under the Code permits necessary adjustments. A judge desiring to afford maximum concurrence of sentences can reduce the base

---

[3]The defendant poses the quandary of four inmates each sentenced at a different time to intendedly concurrent five-year terms. He assumes, as we do not, that judges would be oblivious to the "real time" of the sentence. On his hypothesis the maximum periods of confinement would vary depending on the sentencing dates for the crimes.

| Sentencing date Crime A | Sentencing date Crime B | Parole release date | Parole maximum date |
|---|---|---|---|
| Inmate #1 1/1/80 | 1/1/80 | 9/1/81 | 1/1/85 |
| Inmate #2 1/1/80 | 7/1/80 | 3/1/82 | 7/1/85 |
| Inmate #3 1/1/80 | 1/1/81 | 9/1/82 | 1/1/86 |
| Inmate #4 1/1/80 | 7/1/81 | 3/1/83 | 7/1/86 |

term and, by dispensing with the parole bar, essentially achieve the goal of comparative concurrent sentencing.

In the illustration that defendant furnishes, if the court sentencing Inmate # 3 on January 1, 1981, intended that the concurrent "real time" of the sentence need not exceed September 1, 1981 (the same as for Inmate # 1), the court would have sentenced the defendant to a three-year term.[4] The inmate's "real time" on that sentence would not exceed twelve months (recall that the primary parole eligibility date is one-third of the sentence), and with work and good time credits would come close to the target date.[5] We emphasize that in such cases it is the judge's function to fashion the appropriate sentence for the defendant as the defendant appears before the court on the occasion of sentencing. *See State v. Rodriguez*, 97 *N.J.* 263, 276 (1984).

## IV

In this case we need decide only the question whether the 2C:44–5b credit serves to reduce a judicial parole bar in the context of consecutive sentencing. (Richardson became primarily eligible for parole on these offenses at the expiration of the judicial parole bar in December 1987.) Concededly, our decisional law on the broader meaning of 2C:44–5b has not been uniform.

---

[4]We are unable to deduce from the defendant's examples the degrees of the crimes involved. A repeat second-degree offender would not appear to be a good candidate for the minimum term. *N.J.S.A.* 2C:44–1. A third-degree offender could receive a sentence of between three and five years. *N.J.S.A.* 2C:43–6a(2).

[5]The *Richardson I* court thought that such a prisoner received an anomalous benefit from overlapping aggregation of sentences. "[C]ommutation time accrues faster on longer or aggregated terms than on shorter or non-aggregated terms." 208 *N.J.Super.* at 411. That court recommended legislative consideration of harmonization of the Code and Parole Act since the "gap-time" credit may in some cases be detrimental to the prisoner's penal interests. *But see State v. Lawlor*, 222 *N.J.Super.* 241, 246 (App.Div.1988) (disagreeing).

Yet, no other reported decisions contradict the *Richardson I* holding on the parole bar issue.

As noted, *State v. Lawlor*, 222 *N.J.Super.* 241, 246 (App. Div.1988), questions the *Richardson I* analysis of parole board aggregation of sentences, but *Lawlor* did not directly address the issue here. Similarly, *State v. Alevras*, 213 *N.J.Super.* 331, 339 (App.Div.1986), "decline[d] to decide the question of credits to which defendant was entitled under *R.* 3:21–8 and *N.J.S.A.* 2C:44–5b(2) * * *." In *State v. Hall*, 206 *N.J.Super.* 547, 550 (1985), the Appellate Division concluded that the court, not the parole board, must give credit for jail time served, and then only when the offense was committed before sentence, not before incarceration. The Appellate Division, in *State v. Hugley*, 198 *N.J.Super.* 152, 157–58 (1985), disallowed a credit for time served on an out-of-state conviction. That court noted only that the statute

> affords credits for time served on any offense prior to a prisoner's being sentenced for a crime committed earlier in time than the offense for which he is incarcerated. This credit, presumably, is intended to deter a prosecutor from "dragging his heels" in pursuing an indictment when he knows that an inmate is available for a final disposition of an offense. [*Id.* at 158.]

No decision, then, has held that the "gap-time" credit of 2C:44–5b(2) would reduce a judicial or statutory parole bar. One decision, however, has touched on a related issue:

> While defendant's argument [that the effect of *N.J.S.A.* 2C:44–5b(2) is to treat all sentences as if they had occurred at the time the first sentence was imposed] is not without some support, *Cannel, Title 2C, New Jersey Code of Criminal Justice* (1987), at 757, we find that his assertion is belied by the plain meaning of the statutory language. By its very terms, *N.J.S.A.* 2C:44–5b(2) states that a prior sentence must be credited against a later one *"in determining the permissible aggregate length of the term or terms remaining to be served."* (emphasis added). We have underscored this statutory phrase because it is critically important to resolution of the issue presented. The statute says no more than that the quantum of each sentence is to be aggregated and the time served in imprisonment on the previously imposed term is to be deducted from the total in finding the amount of time yet to be served. In no sense does *N.J.S.A.* 2C:44–5b(2) require that concurrent sentences imposed at different times be served coterminously. [*State v. Benedetto*, 221 *N.J.Super.* 573, 578 (App.Div.1987) (footnotes omitted).]

In that court's view, the effect of defendant's argument would be to require that a concurrent sentence be given a retroactive

effect and be considered as running from the date the prior sentence was imposed, a result impairing sentencing goals of the Code. *Benedetto, supra,* 221 *N.J.Super.* at 579.

Finally, there is an interpretation of the statute not argued by the defendant (because of the "front end" position that he takes) that may directly benefit a defendant's parole ineligibility term. The Attorney General phrases it thus: "[t]he interpretation that the gap time credits of 2C:44–5b(2) only apply to reduce the aggregate term gives the defendant a very real benefit. Not only does the defendant receive a reduced aggregate sentence, he receives a reduced parole eligibility since this is a function of sentence." It is the view of the Attorney General that the judicial function is that of "reducing the entire sentence by the gap period which would permit the Parole Board to calculate parole based on the new reduced sentence and thus result in a lower parole eligibility period." In his view the proper application of *N.J.S.A.* 2C:44–5b(2) is

to reduce the sentence itself and not merely issue credits against the sentence. This is the only application of the statute which recognizes that it is a sentencing provision and by reducing the sentence itself it will also provide the inmate with a reduced parole.

As noted, as part of a sentence for any crime, a court, subject to the conditions of the Code, may set a parole ineligibility term not to exceed one-half of the base term set. *N.J.S.A.* 2C:43–6b. If 2C:44–5b reduces the base term (by limiting the court's authority in setting the base term under 2C:43–6a), that will perforce limit the 2C:43–6b parole bar.

V

In this case, because the argument advanced by defendant presupposes hypothetical circumstances not present in his case, and because the remedy suggested would impermissibly restrict the sentencing authority vested in courts under the Code, we reject defendant's argument that the 2C:44–5b(2) "gap-time"

credit serves to reduce a judicial or statutory parole bar by a "front-end" reduction of aggregated sentences.

We disagree that any other interpretation makes the statute meaningless. The interpretation suggested by the Attorney General does, indeed, confer a real benefit on the defendant. It would prevent or discourage the dilatory prosecution of multiple offenses and would achieve the policy goals embodied in the Code. However, we shall await a later case in which the issue of the Attorney General's suggestion is squarely presented.

In addition, the statute will continue to serve the very important purpose of guaranteeing that courts will be mindful of the "true meaning" that their sentences will impose, *Richardson I*, *supra*, 208 *N.J.Super.* at 413. *N.J.S.A.* 2C:44–5b requires courts to focus on this aspect of the sentencing process. The penal consequences of the "real time" left to be served should fit the offense before the court. Sentencing courts should respect the principle of sentencing expressed in 2C:44–5b(2) that, to the extent possible, sentencing for multiple offenses should not produce disparate results because of the incidental chronology of sentencing. As noted, judges must fashion sentences that are appropriate to the sentencing occasion. *State v. Rodriguez, supra*, 97 *N.J.* at 276. We hasten to add, however, that we do not want the search for consistency in sentencing to turn into a mathematical maze.

> It is not necessary that the sentences be spelled out with the nicety of a quadratic surd equation. Indeed, given the variables of good-time and other credits, no trial court could ever do so. The duty of the trial court is to make his intention clear and positively identify the sentences involved. [*People v. Freeman*, 95 *Ill.App.*3d 297, 302, 50 *Ill.Dec.* 846, 850, 420 *N.E.*2d 163, 167 (Ill.App.Ct.1981).]

"The precise calculation of days and months as the sentences interact *inter sese* and with sentence credits may better be left to the prison and parole authorities." *Id.* at 302, 50 *Ill.Dec.* at 850, 420 *N.E.*2d at 167. Hence, we shall await the presentation of cases with argument focused upon the mechanics of applica-

tion of the credit to the aggregate sentences, i.e., whether it is a deduct after the sentence is stated, or is a factor to be recognized among others in the presentence process when fashioning a sentence appropriate to the sentencing occasion before the court.

The judgment of the Appellate Division is affirmed.

MODEL PENAL CODE    APPENDIX    CODE OF CRIMINAL JUSTICE

Section 7.06.  Multiple Sentences;  Concurrent and Consecutive Terms.*

2C:44-5.  Multiple Sentences; Concurrent and Consecutive Terms.

(1) Sentences of Imprisonment for More Than One Crime. When multiple sentences of imprisonment are imposed on a defendant for more than one crime, including a crime for which a previous suspended sentence or sentence of probation has been revoked, such multiple sentences shall run concurrently or consecutively as the Court determines at the time of sentence, except that:

a. Sentences of imprisonment for more than one offense. When multiple sentences of imprisonment are imposed on a defendant for more than one offense, including an offense for which a previous suspended sentence or sentence of probation has been revoked, such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence, except that:

(a) a definite and an indefinite term shall run concurrently and both sentences shall be satisfied by service of the indefinite term; and

(b) the aggregate of consecutive definite terms shall not exceed one year; and

(1) The aggregate of consecutive terms to a county institution shall not exceed 18 months; and

(c) the aggregate of consecutive indefinite terms shall not exceed in minimum or maximum length the longest extended term authorized for the highest grade and degree of crime for which any of the sentences was imposed; and

(d) not more than one sentence for an extended term shall be imposed.

[New Jersey limit omitted, but credit (see below) included]

(2) Not more than one sentence for an extended term shall be imposed.

(2) Sentences of Imprisonment Imposed at Different Times. When a defendant who has previously been sentenced to imprisonment is subsequently sentenced to another term for a crime committed prior to the former sentence, other than a crime committed while in custody:

b. Sentences of Imprisonment Imposed at different times. When a defendant who has previously been sentenced to imprisonment is subsequently sentenced to another term for an offense committed prior to the former sentence, other than an offense committed while in custody;

(a) the multiple sentences imposed shall so far as possible conform to Subsection (1) of this Section; and

(1) The multiple sentences imposed shall so far as possible conform to subsection a. of this section; and

(b) whether the Court determines that the terms shall run concurrently or consecutively, the defendant shall be credited with time served in imprisonment on the prior sentence in determining the permissible aggregate length of the term or terms remaining to be served; and

(2) Whether the court determines that the terms shall run concurrently or consecutively, the defendant shall be credited with time served in imprisonment on the prior sentence in determining the permissible aggregate length of the term or terms remaining to be served; and

(c) when a new sentence is imposed on a prisoner who is on parole, the balance of the parole term on the former sentence shall be deemed to run during the period of the new imprisonment.

(3) When a new sentence is imposed on a prisoner who is on parole, the balance of the parole term on the former sentence shall not be deemed to run during the period of the new imprisonment unless the court determines otherwise at the time of sentencing.

*For affirmance* —Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed* —None. ·