**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3389-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MARK SETTE,

    Defendant-Appellant.

_____

Submitted October 2, 2024 – Decided October 22, 2024

Before Judges Rose and Puglisi.

On appeal the Superior Court of New Jersey, Law Division, Union County, Indictment No. 88-06-0840.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Daniel S. Rockoff, Assistant Deputy Public Defender, of counsel and on the brief).

James O. Tansey, First Assistant Prosecutor, Designated Union County Prosecutor for purpose of this appeal, attorney for respondent (Milton S. Leibowitz, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplement brief.

PER CURIAM

This 1988 murder case returns to us following a remand for a second resentencing ordered in our prior unpublished opinion. State v. Sette, No. A-0435-20 (App. Div. Jan. 10, 2023) (Sette II). In Sette II, we vacated defendant Mark Sette's aggregate sentence of life plus thirty-eight years with a thirty-year parole disqualifier and remanded for resentencing following an updated presentence report. Pertinent to this appeal, we directed the court to "reassess the applicable aggravating and mitigating factors, including mitigating factor fourteen" and "provide an explicit statement of the overall fairness of the sentence" pursuant to State v. Torres, 246 N.J. 246 (2021).

On remand, a third sentencing judge reduced defendant's aggregate prison term to eighty years with a thirty-year parole disqualifier. In doing so, the judge found different aggravating and mitigating factors than his predecessors and increased the length of the sentences on certain convictions. The sentencing court also imposed new fines and penalties.

Seeking another resentencing, defendant now appeals from a June 30, 2023 judgment of conviction (JOC). The crux of his reprised contentions is that his rehabilitative efforts following his 2012 conversion to Buddhism in

2

prison were not properly considered on resentencing. More particularly, in his counseled brief, defendant raises the following points for our consideration:

POINT I

The sentencing court improperly penalized . . . defendant for not attending and participating in programming that conflicts with his sincerely held religious beliefs, in violation of the Establishment Clauses of our Federal and State Constitutions, and other constitutional protections guaranteeing the freedoms of religion and speech. U.S. Const., amend. I; N.J. Const., art. I, [¶¶] 3, 4, 6.

POINT II

[D]efendant's sentence was excessive, and numerous sentencing errors also require a remand for resentencing.

(1). The court arbitrarily increased the length of two prison terms without explanation.

(2). The court erroneously rejected mitigating factor [seven] — which was found at the two previous sentencings — even though [defendant] has led a law-abiding life for [thirty-five] years.

(3). The court erred by finding aggravating factor [one] based on an improperly double-counted element of the crime.

(4). The court erred by failing to address the overall fairness of an [eighty]-year

3

aggregate term, comprised of four consecutive sentences.

(5). The retroactive application of fines violated the Ex Post Facto Clauses.

In his pro se brief, defendant amplifies appellate counsel's claim that the sentence imposed was vindictive, arguing:

THE JUDGE VIOLATED DEFENDANT'S RIGHTS GUARANTEED BY THE U[NITED] S[TATES] CONSTITUTION, AMENDMENT [V], AND THE NEW JERSEY CONSTITUTION OF 1941, ART[.] 1, [¶] 1.

We reject defendant's sentencing arguments and affirm. The State having acknowledged the Law Enforcement Officers Training and Equipment Fund Penalty (LEOTEFP), N.J.S.A. 2C:43-3.3, and Safe Neighborhoods Services Fund Assessment (SNSFA), N.J.S.A. 2C:43-3.2 may not be imposed retroactively, we vacate the $30 LEOTEFP and the aggregate $375 SNSFA and remand for entry of an amended JOC.

I.

The facts of the brutal attacks are detailed in our initial decision following defendant's direct appeal. State v. Sette, 259 N.J. Super. 156, 161-67 (App. Div. 1992) (Sette I). The protracted procedural posture of the matter

4

is outlined in our recent opinion. Sette II, slip op. at 2. We reiterate the events that are pertinent to this appeal.

> More than three decades ago, a death-qualified jury convicted defendant . . . of mortally stabbing one of his four roommates, wounding another, and attempting to stab two neighbors in their condominium complex in Plainfield. Defendant was twenty-three years old with no criminal history at the time of the March 21, 1988, early morning rampage. The jury spared defendant's life; the trial judge sentenced defendant to an aggregate prison term of life plus thirty-eight years, with forty years of parole ineligibility.
>
> On direct appeal, we affirmed all but one of defendant's convictions. [Sette I], 259 N.J. Super. [at] 192. . . . We remanded the reversed count for further proceedings and "for overall resentencing because of the consecutive sentence imposed on" the reversed count, and did not reach defendant's excessive sentencing argument. Ibid. Apparently, however, the matter slipped through the proverbial cracks for nearly thirty years. Following dismissal of the remanded count in 2019, [the second] judge resentenced defendant [in 2020,] to the same sentences on the remaining counts that had been imposed by the trial judge.
>
> [Sette II, slip op. at 2.]

The present resentencing was held before the third judge in June 2023. In mitigation of sentence, defendant submitted a sentencing memorandum and

video compilation[1] that included the statements of defendant and his mother, sisters, former cellmate, and Buddhist chaplain. Defendant also spoke on his own behalf during the hearing. The State filed a responding memorandum and a letter authored by the decedent's sister. After considering the parties' arguments and submissions, the judge ordered the appropriate mergers and imposed prison terms on the remaining counts of the twelve-count Union County indictment as follows[2]:

- First-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2) (count one): sixty years with a thirty-year parole ineligibility term;

- Second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count six): eight years, imposed consecutively to count one;

---

[1] Defendant's appellate appendix indicates the "mitigation film" was provided on a "disc." Defendant did not, however, provide the disc to the Clerk's Office. Because the contents of the video are not disputed, our review is not hampered by the omission.

[2] The jury acquitted defendant of attempted murder charged in counts five and seven; the trial court dismissed two lesser-included offenses charged in counts two and four; the second judge dismissed the criminal conviction charged in count three on the State's motion following reversal of that count in Sette I, 258 N.J. Super. at 189; and the third judge merged the weapons offense charged in count ten with count one pursuant to our decision in Sette II, slip op. at 19. The sentences on the second-degree aggravated assault charges were imposed prior to the 1997 enactment of the No Early Release Act, N.J.S.A. 2C:43-7.2.

- Second-degree aggravated assault, N.J.S.A. 2C:12(b)(1) (count eight): eight years, imposed consecutively to count one; and

- Third-degree aggravated assault on a law enforcement officer, N.J.S.A. 2C:12-1(b)(6) (count eleven): four years, imposed consecutively to counts one, six, and eight; and

- Fourth-degree resisting arrest, N.J.S.A. 2C:29-2 (count twelve): eighteen months, imposed concurrently to count eleven.

The judge found aggravating factors one (the nature and circumstances of the offense), three (risk of committing another offense), and nine (general and specific deterrence), N.J.S.A. 2C:44-1(a)(1), (3), and (9), applied to count one and substantially outweighed mitigating factors nine (unlikelihood that the defendant will commit another offense) and fourteen (defendant was age twenty-six or younger when the offense was committed), N.J.S.A. 2C:44-1(b)(9) and (14). As to counts six, eight, eleven, and twelve, the judge was convinced aggravating factors three and nine substantially outweighed mitigating factors nine and fourteen.

Unlike his predecessors, the third judge found neither aggravating factor two ("gravity and seriousness of harm inflicted on the victim"), N.J.S.A. 2C:44-1(a)(2), nor mitigating factor seven (lack of a prior juvenile or criminal history), N.J.S.A. 2C:44-1(b)(7). See Sette II, slip op. at 16. Also unlike the

7

other sentencing judges, the third judge found mitigating factor nine in consideration of defendant's remorse, and fourteen in view of his age when he committed the offenses. This appeal followed.[3]

II.

Our analysis of a defendant's sentencing arguments is framed by well-settled principles. Ordinarily, we defer to the sentencing court's determination, State v. Fuentes, 217 N.J. 57, 70 (2014), and do not substitute our assessment of the aggravating and mitigating factors for that of the court, State v. Miller, 205 N.J. 109, 127 (2011); see also State v. Case, 220 N.J. 49, 65 (2014). Accordingly, we will not disturb a sentence unless it violated the sentencing guidelines, relied on aggravating or mitigating factors not based on competent and credible evidence in the record, or applied the guidelines in such a manner as to "make[] the sentence clearly unreasonable so as to shock the judicial conscience." State v. Miller, 237 N.J. 15, 28 (2019) (quoting Fuentes, 217 N.J. at 70). Our deference therefore "applies only if the trial judge follows the

---

[3] The matter initially was listed on a sentencing calendar pursuant to Rule 2:9-11. We thereafter granted defendant's motion to schedule the matter on a plenary calendar.

Code [of Criminal Justice] and the basic precepts that channel sentencing discretion." Case, 220 N.J. at 65.

When sentencing a defendant, a court must identify and balance the aggravating and mitigating factors pursuant to N.J.S.A. 2C:44-1(a) and (b), and explain the factual basis underpinning its findings. Fuentes, 217 N.J. at 72-73. However, the court's explanation of the aggravating and mitigating factors need not "be a discourse." State v. Dunbar, 108 N.J. 80, 97 (1987), overruled in part, State v. Pierce, 188 N.J. 155 (2006). We may uphold a sentence when the "transcript makes it possible to 'readily deduce' the judge's reasoning." Miller, 205 N.J. at 129 (quoting State v. Bieniek, 200 N.J. 601, 609 (2010)).

"[A] remand may be required when a reviewing court determines that a sentencing court failed to find mitigating factors that clearly were supported by the record." Bieniek, 200 N.J. at 608. We will not disturb a sentence if the "court provides reasons for imposing its sentence that reveal the court's consideration of all applicable mitigating factors." Id. at 609.

"Elements of a crime, including those that establish its grade, may not be used as aggravating factors for sentencing of that particular crime," State v. Lawless, 214 N.J. 594, 608 (2013), which "would result in impermissible

double-counting," State v. A.T.C., 454 N.J. Super. 235, 254 (App. Div. 2018). We will remand for resentencing if the sentencing court considers an inappropriate aggravating factor. Fuentes, 217 N.J. at 70.

"After balancing the factors, the trial court may impose a term within the permissible range for the offense." Bieniek, 200 N.J. at 608. In weighing the aggravating and mitigating factors, a court must conduct a qualitative, not quantitative analysis. See State v. Kruse, 105 N.J. 354, 363 (1987). We review a trial judge's findings as to aggravating and mitigating factors to determine whether the factors are based on "competent credible evidence in the record." State v. O'Donnell, 117 N.J. 210, 215 (1989).

## III.

In his first point on appeal, defendant argues the judge improperly penalized him for failing to participate in formal drug treatment programs, such as Narcotics Anonymous and Alcoholics Anonymous, both of which contravene his religious beliefs in violation of his constitutionally protected rights. Accordingly, defendant contends the judge erroneously found aggravating factor three and failed to find mitigating factor eight. The State counters the judge did not require defendant to attend a particular

10

rehabilitation program. Instead, the judge recognized defendant committed the crimes after ingesting illegal drugs and did not seek formal treatment.

At issue are the following findings. Applying aggravating factor three, the judge reasoned:

> Drug use played a role in the events in question. That's without a doubt. [Defendant] has done nothing to formally address his drug addiction. While he has been [i]n forced abstinence in prison, he has not participated in formal programs of drug treatment. Instead, he professes that he has addressed his behavior through the adoption of Buddhism. Buddhism has no pr[o]scription against drug treatment and is not a religion in favor of drug use. Yet, [defendant] uses his religiosity as an excuse to abstain from established, proven and effective treatment in counseling for his condition. Even [defendant]'s Buddhist chaplain confirms that Buddhism is not in favor of drug use, the chaplain does not voice in the carefully crafted, manicured, and edited video provided by the defense. It does not voice any religious rule of Buddhism that would prevent drug treatment . . . from being available to the defendant.
>
> While [defendant] is certainly free to make a choice not to participate in drug treatment, his choice leaves this court to find that his drug issues are untreated and, therefore, unlikely [sic] to reappear should he reenter society. He did indicate in his submissions that it was the stress from work and life which caused him to turn to drugs, which brought us to the day in question. Those stresses exist anytime [defendant] is outside of the prison walls.

In declining to find mitigating factor eight, the judge considered defendant's argument that "he is older, Buddhist, educated, and a vegetarian." But the judge found the absence of evidence in the record to "address how [defendant] would behave if he is released and facing the temptations of the world." Noting defendant "adopted Buddhism in prison," the judge found defendant "may or may not continue on that path upon his release." Further, defendant "decided not to engage in drug treatment and drugs were a key component in" his crimes.

Even if a defendant participates in a drug treatment program, a sentencing court may properly find aggravating factor three and decline to find mitigating factor eight based on the defendant's drug use prior to and during the commission of the crime. See State v. Towey, 244 N.J. Super. 582, 594-95 (App. Div. 1990). Although Towey was decided on Double Jeopardy grounds, our discussion of the risk of re-offense is instructive.

In Towey, the defendant shot and killed her husband while under the influence of drugs and alcohol. Id. at 587. During her resentencing hearing, the defendant argued she had made substantial strides in her sobriety after the offense and, as such, was not at risk to reoffend. Id. at 588. The risk of recurrence was lessened because of the defendant's achievements following the

shooting, but predicting the future conduct of those who have a history of drug or alcohol dependency is very difficult. Id. at 593-95. We also noted the need for deterrence did not diminish simply because the defendant finally understood and regretted her behavior. Id. at 595.

Unlike the present matter, the defendant in Towey had a record of participating "in a drug and alcohol program and founded the Narcotics Anonymous program at the prison." Id. at 588. We noted the judge should have considered her rehabilitative efforts when resentencing the defendant, but upheld the aggravating factor three finding. We reasoned:

> Nonetheless, we cannot conclude that there is no risk present. To the extent that an argument can be made that [the] defendant's reckless criminal behavior was caused by her alcohol and drug dependency, we are not able to conclude that the causative factors have been eliminated. [The defendant's psychiatrist] evaluate[d] the level of risk as dependent on [the] defendant's ability to remain 'abstinent from the use of ethanol and illicit drugs.' At best, we can only say that the risk of recurrence is now considerably less than it was at the time of the initial sentencing and that her current attitude, if maintained, make it less likely that she will commit another offense. The difficulty of predicting future behavior of people who are prone to be drug and alcohol dependent prevents us from totally accepting [the] defendant's position.
>
> [Id. at 594-595.]

As our Supreme Court later acknowledged, the Towey court set "a rather demanding standard for persuasiveness when considering post-rehabilitative evidence in the resentencing calculus." State v. Randolph, 210 N.J. 330, 345 (2012).

Here, the lack of evidence in the record supports the judge's findings. Indeed, defendant neither provided documentation indicating he was required to attend religious-based substance abuse treatment in prison, nor sought non-religious treatment through the Department of Corrections. Instead, the record reflects the judge aptly recognized defendant's right to refrain from drug treatment, but that choice had consequences because defendant committed his crimes while under the influence and his failure to seek formal substance abuse treatment placed him at risk of re-offense.

There was no constitutional violation here. See Lee v. Weisman, 505 U.S. 577, 587 (1992) (holding the "government may not coerce anyone to support or participate in religion or its exercise"); Kerr v. Farrey, 95 F.3d 472, 479 (7th Cir. 1996) (holding prisoners are not unconstitutionally coerced to participate in religion if they may meet a rehabilitation requirement in an alternative secular program). Accordingly, we discern no reason to disturb the judge's assessment of aggravating factor three and mitigating factor eight.

IV.

In overlapping contentions raised in his second point, defendant asserts his sentence was excessive because the judge erroneously: found aggravating factor one by double-counting the elements of murder; rejected mitigating factor seven contrary to the prior sentencing judges; increased the prison terms on both aggravated assault convictions without explanation; and failed to address the overall fairness of the sentence imposed. We are unpersuaded.

A.

Aggravating factor one not only requires consideration of "[t]he nature and circumstances of the offense," but also "the role of the actor in committing the offense, including whether or not it was committed in an especially heinous, cruel, or depraved manner." N.J.S.A. 2C:44-1(a)(1). "[A]n application of aggravating factor one must be premised upon factors independent of the elements of the crime and firmly grounded in the record." Fuentes, 217 N.J. at 63.

"A person is guilty of murder if [the person]: (1) caused the victim's death or serious bodily injury that then resulted in the victim's death"; and (2) "did so purposely or knowingly." Model Jury Charges (Criminal), "Murder N.J.S.A. 2C:11-3(a)(1) and (2)" (rev. June 14, 2004). "In appropriate cases, a

sentencing court may justify the application of aggravating factor one, without double-counting, by reference to the extraordinary brutality involved in an offense." Fuentes, 217 N.J. at 75.

In this case, the judge found and assigned significant weight to aggravating factor one. According to the judge:

> the actions of defendant in stabbing [the decedent] in her upstairs bedroom, then slashing her as she tried to escape, chasing her down the stairs into the living quarters, catching her and then slitting her throat, shows a depth of depravity and cruelty that is rarely seen and goes well beyond what could be associated with the elements necessary for a conviction of murder.

The judge's finding was "premised upon factors independent of the elements of [murder] and firmly grounded in the record." See Fuentes, 217 N.J. at 63.

B.

A sentencing judge may find mitigating factor seven when "[t]he defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense." N.J.S.A. 2C:44-1(b)(7). We have recognized, however, even in the absence of a prior criminal record, a sentencing judge may appropriately decline to find mitigating factor seven where the defendant "for many years,

16

bought and possessed and used multiple different illegal drugs." State v. Vanderee, 476 N.J. Super. 214, 237 (App. Div. 2023).

Moreover, mitigating factor seven is given little weight when the crime is truly heinous and the defendant constitutes a threat to society. See State v. Glover, 230 N.J. Super. 333, 344 (App. Div. 1988). A finding of mitigating factor seven "st[ands] as a counterpoise" to aggravating factor three, and a sentencing judge needs to provide "a reasoned explanation for its conclusion that [a] first-time offender presented a risk to commit another offense." Case, 220 N.J. at 68.

Here, the previous sentencing judges found mitigating factor seven because defendant lacked a prior criminal record. Prior to the present resentencing, however, defendant submitted new documentation, including a March 29, 2023 psychological evaluation prepared by Joël Núñez, Ph.D. at defendant's request. During his interview with Dr. Núñez, defendant "indicated his scholastic underperformance was attributable to being drawn to [an] antisocial peer group involved in 'smoking, drinking, shoplifting, petty crimes with no arrests.'"

In rejecting mitigating factor seven, the judge acknowledged defendant had no prior juvenile or criminal record but found

17

that factor addresses more than that [lack of record]. It is not a question of whether or not you have been caught for something. . . . [D]efendant has admitted a prolonged history of illegal drug use and that's outside of the specific drug use . . . that is at the heart, to a large degree, of this event going back to when he was twelve years of age as well as petty offenses such as shoplifting. That is not leading a law abiding life. He has been incarcerated since 1988 and has not had the opportunity to commit additional offenses upon society.

Similar to the circumstances in <u>Vanderee</u>, the judge recognized defendant's prolonged history of illegal drug use supported his rejection of mitigating factor seven. Unlike the 1989 and 2020 sentencing judges, the third judge was provided additional information, which included defendant's statement to Dr. Núñez. Although we recognize the judge was required to consider defendant on the date of sentencing, <u>see</u> <u>Randolph</u>, 210 N.J. at 349, the plain language of this mitigating factor requires the sentencing judge to analyze defendant's life "before the commission of the present offense," <u>see</u> N.J.S.A. 2C:44-1(b)(7).

## C.

We have long recognized a sentencing judge on remand may not impose a "substantially harsher" sentence unless the increased sentence is required by law or is supported by "any evidence of intervening conduct or prior oversight

to justify the new sentence." State v. Heisler, 192 N.J. Super. 586, 592-93 (App. Div. 1984). Notably, however, the new and original sentences are compared in the aggregate to determine whether the new sentence is harsher. State v. Kosch, 458 N.J. Super. 344, 351-52 (App. Div. 2019). Thus, the Double Jeopardy Clause is not violated by increasing the prison sentence on individual counts as long as the new aggregate sentence does exceed the original aggregate sentence. Ibid. Although imposing the same or lesser aggregate term poses no constitutional violation, a sentencing court is bound by Supreme Court precedent "to overcome any presumption of vindictiveness." State v. Rodriguez, 97 N.J. 263, 276 (1984). Nonetheless, we have concluded "there was no possible vindictiveness" where there was "a reduction of [the defendant's] aggregate term for the same offenses he had been sentenced for originally." See State v. Espino, 264 N.J. Super. 62, 73 (App. Div. 1993).

Here, although the judge increased by one year the sentences on the aggravated assault convictions, defendant's aggregate sentence was reduced from life plus thirty-eight years' imprisonment with a forty-year parole disqualifier to eighty years with a thirty-year parole disqualifier. Except for the merged weapons offense charged in count ten, third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d), defendant was

19

sentenced for the same offenses as those in his prior 2020 sentencing. And on that conviction, defendant was sentenced in 2020 to a four-year prison term imposed concurrently to count one. Contrary to defendant's contention, the record reveals no vindictiveness here.

D.

Similarly, we are not convinced the judge failed to consider the overall fairness of the aggregate sentence, which included four consecutive sentences. As a threshold matter, defendant's passing contention that because his crimes "were sufficiently close in time and place" the judge erroneously assessed the factors established by our Supreme Court in State v. Yarbough, 100 N.J. 627 (1985), lacks sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2). We add only the following brief remarks.

"[T]rial judges have discretion to decide if sentences should run concurrently or consecutively." Miller, 205 N.J. at 128; see also N.J.S.A. 2C:44-5(a). Judges are permitted to impose consecutive sentences where multiple sentences of imprisonment are imposed and after considering the Yarbough factors. "A sentencing court must explain its decision to impose concurrent or consecutive sentences in a given case." State v. Cuff, 239 N.J. 321, 348 (2019). "When a sentencing court properly evaluates the Yarbough

20

factors in light of the record, the court's decision will not normally be disturbed on appeal." Miller, 205 N.J. at 129. Based on our review of the record, we see no reason to disturb the judge's imposition of consecutive terms, which reflects a thoughtful analysis of the Yarbough factors. See ibid.

As the State acknowledges, however, the judge did not expressly state the total aggregate term. Citing the principles reiterated by the Torres Court, however, the judge recognized the imposition of consecutive sentences included "a real-time assessment of the consequences of the aggregate sentences imposed" in view of defendant's age. See 246 N.J. at 273. The judge also considered his obligation to consider defendant as he "appear[ed] before the court on the occasion of sentencing." See ibid. (quoting Richardson v. Nickolopoulos, 110 N.J. 241, 252 (1988)).

Following his analysis of the Yarbough factors, the judge considered defendant was twenty-three years old when he committed the crimes and age fifty-eight on the day of sentencing. Prior to announcing his sentence on each count, the judge elaborated:

> A very substantial sentence could be imposed. A life sentence as was done originally is not an unreasonable sentence. Where there is discretion among judges, there will be range. And different judges will see things differently. When so much time passes between the underlying event and the

resentencing, the obligations of the judge in looking at the defendant as he is presented to the court on the day of the resentencing put that judge in a very different position than a judge who is sentencing someone directly after a trial and without that defendant having years and years and years and year[s] to obtain mitigation.

The punishment must fit the crime. It must not be vindictive as opposed to being punitive. There should also not be any free crimes. And where, as here, crimes were committed against distinct persons over a period of time punishment on each separately is appropriate.

Although we recognize the reduction in defendant's aggregate sentence did not realistically change the real-time consequence of his imprisonment, the judge's decision reflects he considered the overall fairness of the resulting sentence. We discern no reason to disturb his assessment. See Torres, 246 N.J. at 272.

Affirmed and remanded solely for correction of the JOC.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION