625 A.2d 1153

DOUGLAS BOOKER, APPELLANT, v. NEW JERSEY STATE PAROLE BOARD, RESPONDENT.

DARRELLE NELSON, APPELLANT, v. NEW JERSEY STATE PAROLE BOARD, RESPONDENT.

NEEDHAM FITZPATRICK, APPELLANT, v. NEW JERSEY STATE PAROLE BOARD, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 6, 1993—Decided June 9, 1993.

192

Before Judges ANTELL[1], DREIER and SKILLMAN.

*J. Michael Blake*, Assistant Deputy Public Defender argued the cause for appellants (*Zulima V. Farber*, Public Defender, attorney; *Mr. Blake*, on the briefs).

---

[1] Judge Antell did not participate in oral argument, but has with the consent of counsel been added to the panel deciding the matter.

*Michael D. Carlin,* Deputy Attorney General argued the cause for respondents (*Robert J. Del Tufo,* Attorney General, attorney; *Mary C. Jacobson,* Senior Deputy Attorney General, of counsel, *Mr. Carlin,* on the briefs).

The opinion of the court was delivered by

DREIER, J.A.D.

In these three appeals from final determinations of the State Parole Board, each petitioner contends that he has been given improper gap-time credits, which are required by *N.J.S.A.* 2C:44–5b. Although each of these cases requires a different analysis, we consolidate them for the purpose of this opinion.

The dates each petitioner committed the offenses for which he was sentenced and the dates and term of each sentence are easy to state. We need not consider any facts relating to the underlying offenses or sentencing factors.

*Petitioner Douglas Booker:*

*Crime 1:* On October 6, 1989, Booker pleaded guilty pursuant to a plea agreement to two counts of aggravated sexual assault under separate Union County indictments.

*Crime 2:* On November 28, 1989, Booker pleaded guilty pursuant to a plea agreement to various counts of aggravated sexual assault and burglary contained in five Essex County indictments for crimes committed December 15, 1988.

*Sentence 1:* On February 9, 1990, Booker was sentenced to concurrent twenty-year terms of imprisonment with a ten-year period of parole ineligibility in the Adult Diagnostic and Treatment Center (Avenel) pursuant to a plea agreement on the two Union County aggravated sexual assault charges (Crime 1).

*Sentence 2:* On May 25, 1990, Booker was sentenced by a different judge to an aggregate sentence of fifty years with a twenty-five year period of parole ineligibility pursuant to a plea agreement on the five Essex County indictments (Crime 2). The

judge refused to sentence Booker to Avenel. The judge ordered this sentence to be served concurrently with the Union County sentence.

Booker appealed the Essex County sentence. In a September 16, 1991 order, we affirmed the sentence, A–6400–89T4, but remanded the matter for calculation of a gap time credit for the period between the impositions of sentence in Union and Essex Counties. On January 24, 1992, the Essex County judge awarded Booker 106 days of gap time credit.

Booker then wrote to the New Jersey State Parole Board to inquire whether the 106 days of gap time credit would affect his parole eligibility. The Board replied in a February 28, 1992 letter that the 106 days of gap time credit would not affect computation of Booker's date of parole eligibility. Booker appealed.

*Petitioner Needham Fitzpatrick:*

*Crime 1:* On February 19, 1986, Ocean County Indictment 133–86 charged Fitzpatrick with three counts of first-degree armed robbery, two counts of second-degree possession of a weapon for an unlawful purpose, and two counts of second-degree possession of a weapon without a permit. Defendant originally entered a plea of not guilty, but later retracted that plea and entered a guilty plea to two of the armed robbery charges. The remaining charges were later dismissed.

*Crime 2:* On January 27, 1987, Fitzpatrick was indicted on seventeen counts in Monmouth County Indictment 127–87 for crimes committed in 1986. He entered a plea of not guilty on all counts. A jury subsequently convicted Fitzpatrick of fourteen of the counts and found him guilty of a lesser, included offense on a fifteenth charge. A mistrial was declared with regard to the two remaining counts.

*Crime 3:* On February 10, 1988, Ocean County Indictment 97–2–88 charged Fitzpatrick with five counts: aggravated sexual assault; kidnapping; making terroristic threats; armed robbery; and possession of a weapon for an unlawful purpose. The crimes

were committed in August 1986. On March 20, 1990, a jury found Fitzpatrick guilty of aggravated sexual assault; first degree kidnapping; terroristic threats; and armed robbery.

*Sentence 1:* On January 11, 1987 in Ocean County, the judge sentenced Fitzpatrick to concurrent terms of fifteen years with five years of parole ineligibility on his guilty plea to two armed robbery charges (Crime 1).

*Sentence 2:* On September 11, 1987 in Monmouth County, the judge sentenced defendant on the fifteen convictions (Crime 2). Fitzpatrick appealed his conviction and sentence. By an opinion dated October 16, 1989, we affirmed Fitzpatrick's conviction, but vacated the sentence and remanded for re-sentencing. On November 14, 1989, the judge re-sentenced Fitzpatrick to an aggregate term of forty-five years with fifteen years of parole ineligibility. The judge ordered this sentence to be served consecutively to Fitzpatrick's Ocean County sentence.

*Sentence 3:* On August 24, 1990 in Ocean County, the judge sentenced defendant to an aggregate sentence of thirty years with fifteen years of parole ineligibility. The judge ordered this sentence to run consecutively to any other sentences defendant was serving. Fitzpatrick appealed his conviction under Ocean County Indictment 97–2–88 (Crime 3/Sentence 3). In his appeal, A–869–90T4, Fitzpatrick asserted that the judge erred in not awarding gap-time credit. Fitzpatrick did not there claim how such gap-time credit should be deducted from his parole ineligibility date. On February 5, 1992, we decided that Fitzpatrick was entitled to two years and 347 days of gap-time credit, but that this credit should not be applied at the front end against Fitzpatrick's period of parole ineligibility. The judge amended Fitzpatrick's judgment of conviction accordingly on February 28, 1992 and signed the change of sentence on March 17, 1992.

On March 31, 1992, Fitzpatrick's attorney made an inquiry to the New Jersey State Parole Board to determine whether gap-time credit would be applied in the calculation of Fitzpatrick's

parole ineligibility. The Board replied with a negative answer on April 13, 1992. Fitzpatrick appealed.

*Petitioner Darrelle Nelson:*

*Crime 1:* Nelson was arrested in Bergen County on October 6, 1989. He ultimately pleaded guilty to one charge of possession of cocaine with intent to distribute and one count of hindering apprehension.

*Crime 2:* On April 12, 1990, while out on bail, Nelson was arrested again in Bergen County, and ultimately pleaded guilty to one charge of robbery.

*Sentence 1:* On May 11, 1990, the judge sentenced Nelson on his 1989 crimes to an aggregate probationary term of five years, conditioned upon serving 364 days in the Bergen County Jail and securing both full-time steady employment and drug counselling and testing upon release.

*Sentence 2:* On December 14, 1990, a different judge sentenced Nelson on the robbery charge to a five year sentence to run concurrently with the previous sentence imposed. He credited Nelson with 247 [2] days spent in custody as gap-time credit, calculated from April 12, 1990 to December 14, 1990.

In a March 18, 1992 letter to the Parole Board, Nelson's counsel requested a clarification concerning the effect of Nelson's 247 days of gap-time credit on Nelson's parole eligibility date. The Board responded in an April 15, 1992 letter stating that gap-time credits do not affect the date of parole eligibility. Nelson appealed, claiming his 218 days of gap-time credit reduces his parole eligibility date.

Each of the petitioners raises a single issue: [3]

---

[2] Actual gap-time credit is 218 days, calculated from the date of sentencing, May 11, 1990. This discrepancy was later remedied.

[3] We have been informed by the Public Defender that there are three other pending cases raising similar issues. *Evans v. New Jersey State Parole Board,* A–

## POINT I

APPELLANT IS ENTITLED TO HAVE HIS SENTENCE AND PAROLE ELIGIBILITY CALCULATED IN THE MANNER DESCRIBED BY THE ATTORNEY GENERAL IN ITS INTERPRETATION OF *N.J.S.A.* 2C:44–5b(2) WHICH WAS PRESENTED TO THE SUPREME COURT IN *RICHARDSON V. NICKOLOPOULOS*, 110 *N.J.* 241[,540 *A.*2d 1246] (1988).

*N.J.S.A.* 2C:44–5b governs the imposition of gap time credits.

*Sentences of imprisonment imposed at different times.* When a defendant who has previously been sentenced to imprisonment is subsequently sentenced to another term for an offense committed prior to the former sentence, other than an offense committed while in custody:

. . . .

(2) Whether the court determines that the terms shall run concurrently or consecutively, the defendant shall be credited with time served in imprisonment on the prior sentence in *determining the permissible aggregate length of the term or terms remaining to be served.* . . .

[ (emphasis added) ].

This statute has been construed in detail in *Richardson v. Nickolopoulos*, 110 *N.J.* 241, 540 *A.*2d 1246 (1988), and most recently in *State v. Edwards*, 263 *N.J.Super.* 256, 622 *A.*2d 919 (App.Div. 1993). *See also State v. Robinson*, 253 *N.J.Super.* 346, 601 *A.*2d 1162 (App.Div.), *certif. denied*, 130 *N.J.* 6, 611 *A.*2d 646 (1992); *Sheil v. New Jersey State Parole Board*, 244 *N.J.Super.* 521, 582 *A.*2d 1279 (App.Div.1990), *certif. granted*, 126 *N.J.* 320, 598 *A.*2d 881 (1991), *appealed dismissed*, 126 *N.J.* 308, 598 *A.*2d 872 (1991); *State v. Richardson*, 208 *N.J.Super.* 399, 506 *A.*2d 43 (App.Div.), *certif. denied*, 105 *N.J.* 552, 523 *A.*2d 188 (1986); *State v. Hall*, 206 *N.J.Super.* 547, 503 *A.*2d 344 (App.Div.1985); *State v. Hugley*, 198 *N.J.Super.* 152, 486 *A.*2d 900 (App.Div.1985), and *Lorenzo v. Edmiston*, 705 *F.Supp.* 209 (D.N.J.), *affirmed* 882 *F.*2d 511 (3rd Cir.1989).

*N.J.S.A.* 2C:44–5b is derived from section 7.06(2) of the Model Penal Code. This section was intended to be read in conjunction with the limitation on consecutive sentences. The Model Penal

1940–92T2; *Secor v. New Jersey State Parole Board*, A–4810–90T4 (which may be moot due to the petitioner's release on parole), and *Amiditis v. New Jersey State Parole Board*, A–2702–92T3.

Code drafters crafted the gap-time section as a means of insuring that neither the number nor order of a defendant's sentences would cloud a sentencing judge's circumspect consideration whether to impose concurrent or consecutive sentences. Unfortunately, as noted in *Richardson v. Nickolopoulos, supra,* 110 *N.J.* at 242, 540 *A.*2d 1246, our Code of Criminal Justice did not include the Model Code's limitation on the aggregate of consecutive terms. We have a common-law rough equivalent of this provision, however, in the general terms of *State v. Yarbough,* 100 *N.J.* 627, 643–644, 498 *A.*2d 1239 (1985), *cert. denied,* 475 *U.S.* 1014, 106 *S.Ct.* 1193, 89 *L.Ed.*2d 308 (1986), and its progeny. *Richardson* determined that the primary intention of our Legislature in adopting the gap-time credit was to effect "an overall restraint on the base term of the aggregated sentences." 110 *N.J.* at 245, 540 *A.*2d 1246.

A second ostensible purpose of this statute is to safeguard defendant from any adverse consequences of the State's failure to prosecute defendant for all offenses committed prior to any sentencing date. The statute forces a sentencing judge to consider defendant's prior sentences so that at the time a defendant is sentenced punishment will be imposed for all crimes committed to that date. The statute thus counteracts the adverse sentencing impact upon a defendant from "dilatory tactics of a prosecutor in pursuing a conviction for an earlier offense after a defendant has been sentenced on another crime." *State v. Edwards,* 263 *N.J.Super.* at 260, 622 *A.*2d 919; *see Sheil v. New Jersey State Parole Board, supra,* 244 *N.J.Super.* at 526, 582 *A.*2d 1279; *State v. Richardson, supra,* 208 *N.J.Super.* at 408–415, 506 *A.*2d 43; *State v. Hall, supra,* 206 *N.J.Super.* at 550, 503 *A.*2d 344 (App.Div.1985); *State v. Hugley, supra,* 198 *N.J.Super.* at 158, 486 *A.*2d 900; *and* Judge Baime's comprehensive review of the purpose and history of the gap-time credit in *State v. Edwards, supra,* 263 *N.J.Super.* at 920–922, 622 *A.*2d 919; Cannel, *New Jersey Criminal Code Annotated,* comment to *N.J.S.A.* 2C:44–5 (1993). Without such a statute, the State could sentence a defendant to equal concurrent sentences at a series of sentencing dates, but defendant would

serve sentences that were not coterminous because of the postponement of the sentencing date.

We must first examine what petitioners and the State contend should be the application of the gap-time statute to each case.

As noted above, Booker received concurrent sentences of twenty years with a ten-year parole disqualifier, followed 106 days later by a concurrent fifty-year term with a twenty-five-year parole disqualifier. The 106-day gap-time credit clearly cannot be taken off the front end of the second parole disqualifier. *Richardson,* 110 *N.J.* at 254-255, 540 *A.*2d 1246.[4] Alternatively, Booker reads the gap-time statute as requiring that the credit be given against his aggregate term (fifty years), and that this be deemed to limit the total parole disqualification term that was imposed (twenty-five years), calculated as a percentage of the maximum term. He urges that the 106-day credit reduces his maximum term and therefore his maximum (one-half) parole disqualifier should be reduced by fifty-three days. Under *N.J.S.A.* 2C:43-6b, the parole disqualification "minimum term [is] not to exceed one-half of the term set pursuant to [*N.J.S.A.* 2C:43-6a]."

Parole disqualification terms are matters of judicial sentencing discretion, provided the judge "is clearly convinced that the aggravating factors substantially outweigh the mitigating factors." *N.J.S.A.* 2C:43-6b. Within the parole disqualifier range of one-third to one-half of the sentence, the judge can take into consideration any factors necessary to adjust the term. Therefore, the State urges the gap-time credit is merely a factor to be considered by the judge, not a limitation on the sentence.

---

[4] The Administrative Office of the Court, by Directive # 1-1993 dated January 22, 1993, requires the trial judge to compute the gap-time credit. The Directive states that while jail credits reduce parole ineligibility terms " 'gap-time' credit does not," and "is awarded against the 'back end' of the aggregate sentence." While such a Directive may be effective to change the forms used by the trial judge and establish an administrative procedure, and while we here agree with the Directive, it has no substantive effect in the interpretation of the statute or prior case law.

Where the judge wishes to impose a maximum term unaffected by gap-time credits, the potential gap-time credit could have a real effect on the time a defendant may serve. In Booker's case the difference is a matter of a few months. (In Fitzpatrick the difference is a matter of years). The issue, therefore, is a difficult one. We will further consider his argument after explaining the claims of the other petitioners.

Fitzpatrick presents an entirely different situation. His three crimes resulted in sentences of fifteen years with a five-year parole disqualifier, a consecutive forty-five-year term with a fifteen-year parole disqualifier, and a further consecutive thirty-year term with a fifteen-year parole disqualifier. His total sentence is ninety years with a thirty-five year parole disqualifier. He was entitled to approximately three years of gap-time credit (two years, 347 days). He raises the same argument as Booker for the reduction of his aggregate term and the percentage of the term that was ordered to be served before parole.

■ Where there are consecutive sentences with the first containing a period of parole ineligibility, gap-time credits make little sense. Had the defendant been sentenced for all of the crimes on the same date, with consecutive terms imposed, the later sentences would not be implemented until the earlier sentences were served. The terms are all added to determine the maximum sentence. The parole disqualifier is utilized to determine the minimum time that must be served. Finally, gap-time credit is applied to the back end of the sentence to reduce the aggregated sentence. Unlike the situation where there is a later-imposed concurrent sentence, when a defendant with a later-imposed consecutive sentence serves his first day on the first term, he receives a credit reducing the aggregate term as well as the first parole disqualifier. Defendant thus is already receiving the credit that the gap-time statute specifies he should receive. *See State v. Richardson*, 208 *N.J.Super.* at 414–415, 506 *A.*2d 43. If we were to accede to Fitzpatrick's request, he would be receiving double

credits for the time served. Where there are consecutive sentences there is no reason to grant additional credits.

Fitzpatrick, however, notes that *N.J.S.A.* 2C:44–5b(2) states: "Whether the court determines that the terms shall run *concurrently or consecutively*, the defendant shall be credited with the time served in imprisonment on the prior sentence in determining the permissible aggregate length of the term or terms remaining to be served." (Emphasis added). We do not read the emphasized words "concurrently or consecutively" to mean that additional credits should be given to a defendant who is serving consecutive terms. Rather, we read the phrase as meaning that a defendant serving concurrent sentences under the terms of the section shall receive the same benefit as would a defendant who has been sentenced to consecutive terms, with the total terms aggregated and the amount served on the initial sentence deducted from the aggregate.

Petitioner Nelson presents a different situation in that he was not sentenced to consecutive terms. He received a five-year term conditioned upon serving 364 days in the County Jail, and a second concurrent five-year term imposed 218 days later.[5] He contends that under the Parole Act, *N.J.S.A.* 30:4–123.45 *et seq.*, the Parole Board should compute his first parole eligibility date on the basis of the aggregate maximum term to which he was sentenced, less the gap-time credit to which he is entitled.

*N.J.S.A.* 30:4–123.51h provides:

> When an inmate is sentenced to more than one term of imprisonment, the primary parole eligibility terms calculated pursuant to this section shall be aggregated by the board for the purpose of determining the primary parole eligibility date.... The board shall promulgate rules and regulations to govern aggregation under this subsection.

[5] At oral argument we inquired as to whether defendant Nelson had been paroled, since ordinarily he would have been paroled by the date of the hearing. He has a parole eligibility date of October 17, 1993. He is therefore still incarcerated.

The Board's current regulations, discussed *infra*, do not provide for gap-time credits in computing a prisoner's primary parole eligibility date. However, insofar as the Parole Board's rules may differ from the requirements of *N.J.S.A.* 2C:44–5b(2), the statute must control. The statute says specifically that "the defendant *shall be credited* with time served in imprisonment on the prior sentence in determining the permissible aggregate length of the term or terms remaining to be served." (Emphasis added). This is a direction to whomever computes the term remaining to be served, here the Parole Board.[6]

We see, therefore, that the three cases before us each calls into question the effect of the gap-time credit on an aggregate term when the aggregate term is used to compute another date affecting a defendant's sentence. In *Booker* and *Fitzpatrick*, the subtraction of time from the aggregate sentence is urged as limiting the fractional period of parole ineligibility. In *Nelson*, the reduction is urged as advancing the primary parole eligibility date.

This argument is not a new one. It was advanced in *Richardson v. Nickolopoulos*, not by the defendant, but by the Attorney General. In *Richardson* the Attorney General successfully argued that a gap-time credit should not be deducted from the front end of a parole eligibility term. But, since the statute had to be given some effect, the Attorney General, as noted in the Supreme Court opinion, argued that

'[t]he interpretation that the gap-time credits of 2C:44–5b(2) only apply to reduce the aggregate term gives the defendant a very real benefit. Not only does the defendant receive a reduced aggregate sentence, he receives a reduced parole eligibility since this is a function of sentence.' It is the view of the Attorney General that the judicial function is that of 'reducing the entire sentence by the gap period which would permit the Parole Board to calculate parole based on the new reduced sentence and thus result in a lower parole eligibility period.' In [the Attorney General's] view the proper application of *N.J.S.A.* 2C:44–5b(2) is

---

[6] The aggregation of terms is specifically mandated by statute. *N.J.S.A.* 2C:44–5e(2). "When terms of imprisonment run consecutively, the terms are added to arrive at an aggregate term to be served equal to the sum of all terms." On the other hand, if concurrent terms are imposed, "the shorter terms merge in and are satisfied by discharge of the longest term." *N.J.S.A.* 2C:44–5e(1).

to reduce the sentence itself and not merely issue credits against the sentence. This is the only application of the statute which recognizes that it is a sentencing provision and by reducing the sentence itself it will also provide the inmate with a reduced parole.

[110 *N.J.* at 254, 540 *A.*2d 1246].

This is precisely what Nelson has urged in the case before us.

The Supreme Court's opinion in *Richardson* does not stop with this support of Nelson's argument, it also buttresses Booker's position. The Supreme Court continued:

As noted, as part of a sentence for any crime, a court, subject to the conditions of the Code, may set a parole ineligibility term not to exceed one half of the base term set. *N.J.S.A.* 2C:43–6b. If 2C:44–5b reduces the base term (by limiting the court's authority in setting the base term under 2C:43–6a), *that will perforce limit the 2C:43–6b parole bar.*

[*Ibid.* (emphasis added) ].

This latter quotation, not attributed to the Attorney General, but rather in the words of the Supreme Court, concisely states Booker's argument.[7]

In the cases before us, the Attorney General has abandoned the position taken in *Richardson*. Contrite, the Attorney General can only say that the arguments advanced to the Supreme Court and memorialized in *Richardson* were incorrect. This explanation was considered by this court in *Sheil v. New Jersey State Parole Board, supra,* 244 *N.J.Super.* at 527–528, 582 *A.*2d 1279. We there stated:

It is settled, however, that such gap-time credits cannot be applied to reduce a parole ineligibility period. The credits are only used to determine the 'permissible aggregate length of the term remaining to be served.'

[*Id.* at 527, 582 *A.*2d 1279].

This court then noted the Attorney General's interpretations set forth in *Richardson* and found the point made by the Attorney General "to be ambiguous." *Ibid.* The court continued, stating, "Moreover, whatever point the Attorney General was trying to

---

[7] Fitzpatrick, however, can find no support in *Richardson*. As noted earlier, the application of gap-time to consecutive sentences where the first contains a parole disqualifier would lead to the anomalous result of double credits rather than insuring a single credit.

make therein, it was purely dictum and not binding on this court."
*Ibid.* The *Sheil* court relied upon the *Richardson* holding that
gap-time credits do not reduce parole ineligibility. 110 *N.J.* at
254–255, 540 *A.*2d 1246.

The Supreme Court in *Richardson v. Nickolopoulos* made no
definitive holding concerning the Attorney General's suggestions
of the practical applications of the gap-time statute. It held only
that there was no " 'front-end' reduction of aggregated sentences."
110 *N.J.* at 255, 540 *A.*2d 1246. The *dictum* quoted above merely
answered defendant's argument that the failure to give a front-end
reduction made the statute meaningless. The Court noted that
the Attorney General's interpretation "does, indeed, confer a real
benefit on the defendant" by preventing or discouraging "dilatory
prosecution of multiple offenses," and achieving "the policy goals
embodied in the Code." *Ibid.* The Court, however, did not
proffer a definitive interpretation, stating that it would "await a
later case in which the issue of the Attorney General's suggestion
is squarely presented." *Ibid.* Specifically, the Court awaited "the
presentation of cases with argument focused upon the mechanics
of application of the credit to the aggregate sentences, i.e., wheth-
er it is a deduct after the sentence is stated, or is a factor to be
recognized among others in the presentence process when fashion-
ing a sentence appropriate to the sentencing occasion before the
court." *Id.* at 255–256, 540 *A.*2d 1246.

Putting aside the evident non-application of the statute in
*Fitzpatrick,* it appears that we have in the *Booker* and *Nelson*
appeals the precise questions left open by the Supreme Court in
*Richardson v. Nickolopoulos.* It is also the question that would
have been presented to the Supreme Court in *Sheil,* but for the
plea bargain entered into with that defendant during the pendency
of the appeal before the Supreme Court and the consequent
dismissal of the appeal.

 We have independently reconsidered *Sheil's* application of
the gap-time statute. While we find the question a close one, we
concur with the *Sheil* result only as it applies to parole disqualifi-

cation sentences. We note that *Sheil* has no application to the *Nelson* appeal. In a sentence without a parole disqualifier, there is no question that the aggregate sentence must be reduced by the gap-time credit. *N.J.S.A.* 2C:44–5b(2). Also, the Parole Board must establish the primary parole eligibility date based upon the aggregate sentence. *N.J.S.A.* 30:4–123.51h. Therefore, the Parole Board must first reduce the aggregate sentence by the gap-time credit before computing the primary parole eligibility date. It has not done so in Nelson's case, and this omission must be corrected.[8]

■ Our reconsideration of the direct holding in *Sheil* presents a harder question. To uphold the sentence as applied by the court and Parole Board, we must interpret the gap-time statute as permitting a judge to impose a maximum parole disqualifier on an aggregate sentence which must be reduced by a gap-time credit; such action would not take that credit into consideration.[9]

The Legislature has accorded parole disqualifiers a special status. The disqualifier described in the statutes is a percentage of the total term imposed ("one-half of the term set pursuant to [*N.J.S.A.* 2C:43–6a], which serves as a limit on the judge's discretion, *i.e.*, a fixed term of years from eighteen months through twenty years depending on the degree of the crime), not an "aggregate" term. *N.J.S.A.* 2C:43–6b.[10] While jail credits may

---

[8] We realize that this determination will require a recomputation of many parole eligibility dates where there are applicable gap-time credits. While we give due deference to administrative interpretations of statutes within an agency's purview, perpetuation of a mistaken administrative *interpretation of a* statute should not be a judicial or an administrative goal.

[9] We acknowledge that had Booker been sentenced to both of the sentences at the same time, he would have been receiving a credit against the sentence on which his second parole disqualifier was calculated.

[10] *See also* the legislatively-imposed mandatory terms of parole ineligibility. *N.J.S.A.* 2C:43–6c (Graves Act) ("at, or between, one-third and one-half of the sentence imposed by the court or three years, whichever is greater...." *i.e.*, a fixed term of years); *N.J.S.A.* 2C:35–5b(1) and 2C:35–5b(6) (manufacturing or

be applied against the sentence as time already served, no other credits are permitted where a parole disqualifier applies. *N.J.S.A.* 30:4–123.51a.

The legislative history to the Parole Act of 1979, *L.*1979 *c.* 441 is scant insofar as it pertained to the "aggregation" section of the Act. *N.J.S.A.* 30:4–123.51h (*L.*1979, *c.* 441, § 7h). There is no specific comment relating to this section in the extensive Assembly Judiciary, Law, Public Safety and Defense Committee Statement. However, in the general section, the Committee's Statement shows a clear recognition that the Parole Act must be read in conjunction with the New Jersey Code of Criminal Justice. Both the sentencing judge and Parole Board are enjoined to consider the other's function. The Statement notes that the "power to incarcerate" and "the power to decide how long a convict should serve in order to satisfy the punitive and retributive aspects of a sentence, [has shifted] from the parole process to the sentencing process. The Code has prepared for this by providing that in determining a sentence a judge must specifically consider parole eligibility as a factor. (*N.J.S.* 2C:43–2d.)." The Committee Statement also notes that "Parole eligibility for state prison inmates sentenced under the new code is established at one-third of the maximum sentence *unless a judicial or statutory mandatory minimum sentence is set.*" (emphasis added).

*N.J.S.A.* 30:4–123.51a specifically recognizes the difference between a computation of a parole eligibility date by the Parole Board and a judicial or statutory mandatory minimum term. The statute provides that an inmate becomes "primarily eligible for parole *after having served any judicial or statutory mandatory*

---

distributing of over five ounces of certain drugs) ("at or between, one-third and one-half of the sentence imposed...." *i.e.*, a fixed term of years); *N.J.S.A.* 2C:35–6 (employing a juvenile in a drug distribution scheme) ("at, or between, one-third and one-half of the sentence imposed, or five years, whichever is greater...." *i.e.*, a fixed term); *N.J.S.A.* 2C:35–7 (distribution of drugs within 1,000 feet of a school property) ("at, or between, one-third and one-half of the sentence imposed, or one year, whichever is greater...." *i.e.*, a fixed term of years).

*minimum term,* or one-third of the sentence imposed where no mandatory minimum term has been imposed less commutation time [and work credits]." [11] (emphasis added). The reiteration of this principle in both the statute and the Assembly Committee Statement underscores the Legislature's determination that a period of parole disqualifier is an absolute term, against which there are to be no credits (other than jail credits). In *N.J.S.A.* 30:4-123.51a, the Legislature specifically provided that "commutation and work credits shall not in any way reduce any judicial or statutory mandatory minimum term...."

We note the absence of similar language in *N.J.S.A.* 2C:44-5b(2). Thus it might be said that the gap-time credits could reduce a mandatory minimum term. Gap-time credit might have been considered as a type of jail credit, but *Richardson v. Nickolopoulos* foreclosed such an analysis, since a jail credit would effect a front-end reduction, and this application was there rejected. 110 *N.J.* at 254–255, 540 *A.*2d 1246. *Richardson* left open only the possibility of crediting gap-time against an aggregate sentence. The preclusion of other such credits in *N.J.S.A.* 30:4-123.51a, and the Legislature's efforts to make parole ineligibility terms inviolate once imposed, cause us to interpret the gap-time credits as applying only after a mandatory sentence has been served.

---

[11] The parole release administrative regulations, *N.J.A.C.* 10A:71–3.1 *et seq.,* contain no reference at all to gap-time credits, although they note how various other credits are to be applied (jail credits, commutation credits and work credits). There is a general inapplicability of the commutation and work credits to mandatory minimum terms.

We might assume that the absence of any reference to gap-time credits is based upon the administrative assumption that the court, not the Parole Board will have applied any gap-time credits in establishing the sentence to be served, although the same assumption might well have been applied to jail credits which are specifically considered. Since, as noted herein, gap-time credits must be given where there is no statutory or court-imposed parole disqualifier, the Parole Board should supplement *N.J.A.C.* 10A:71–3.2 by including an appropriate regulation governing the computation and application of gap-time credits to other than parole disqualification terms.

In summary, we hold that where a defendant is sentenced to a period of parole ineligibility, gap-time credit only reduces the aggregate term to be served after the defendant serves the mandatory period of incarceration. Where a defendant receives no mandatory period of incarceration, gap-time credit reduces the aggregate term and the Parole Board must compute defendant's parole eligibility date on the basis of the reduced aggregate sentence. Gap-time credit is inapplicable to consecutive sentences where the first sentence includes a term of parole ineligibility.

In *Booker v. New Jersey State Parole Board*, A–3724–91T3, and in *Fitzpatrick v. New Jersey State Parole Board*, A–4982–91T3, the determinations of the New Jersey State Parole Board are affirmed.

In *Nelson v. New Jersey State Parole Board*, A–4977–91T2, the matter is remanded to the New Jersey State Parole Board for recomputation of petitioner's next parole date.