654 A.2d 1022

STEPHEN D. MITNAUL, APPELLANT, v. NEW JERSEY STATE PAROLE BOARD, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted February 16, 1995—Decided March 16, 1995.

Before Judges KING, MUIR, Jr., and D'ANNUNZIO.

*Susan L. Reisner,* Public Defender, attorney for appellant (*J. Michael Blake,* Assistant Deputy Public Defender, of counsel and on the letter brief).

*Deborah T. Poritz,* Attorney General of New Jersey, attorney for respondent (*Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Michael Carlin,* Deputy Attorney General, on the letter brief).

The opinion of the court was delivered by

MUIR, JR., J.A.D.

This appeal relates to the effect the "gap time credit" provision of *N.J.S.A.* 2C:44–5b(2) has on an indeterminate term imposed pursuant to *N.J.S.A.* 2C:43–5 (Young Adult Offenders) where the maximum term set is an aggregate 12 years for first-degree aggravated sexual assault (*N.J.S.A.* 2C:14–2a(5)(a)), first-degree robbery (*N.J.S.A.* 2C:15–1), and third-degree terroristic threats (*N.J.S.A.* 2C:12–3). Defendant contends the credit must reduce the actual time he is required to serve before he can be released on parole. The Parole Board contends the credit only reduces the maximum length of the indeterminate term and not actual time or 40 months indeterminate initial parole eligibility date set by *N.J.A.C.* 10A:71–3.3. We agree with the Parole Board and affirm.

Imposition of an indeterminate term for eligible youthful offenders rests in the sound discretion of the sentencing judge. *State v. Styker,* 134 *N.J.* 254, 256, 633 *A.*2d 521 (1993) (Wilentz, C.J., concurring). In the exercise of that discretion, the sentencing judge may for good cause impose a maximum length of term so long as it does not exceed the maximum term otherwise provided by law for the particular crime or crimes involved. *State v. Jarbath,* 114 *N.J.* 394, 402, 555 *A.*2d 559 (1989). The 12–year maximum term imposed here is not at issue.

Youthful offender inmates and state prison inmates have different criteria governing their parole eligibility dates. The Parole Act sets the basis for the dichotomy. On the one hand, *N.J.S.A.* 30:4–123.51a provides:

> Each adult inmate sentenced to a ... specific term of years at the State Prison ... shall become primarily eligible for parole after having served any judicial or statutory mandatory minimum term, or one-third of the sentence imposed where

no mandatory minimum term has been imposed less commutation time for good behavior ... and credits for diligent application to work and other institutional assignments....

On the other hand, *N.J.S.A.* 30:4–123.51d provides:

Each adult inmate sentenced to an indeterminate term of years as a young adult offender pursuant to N.J.S. 2C:43–5 shall become primarily eligible for parole consideration pursuant to a schedule of primary eligibility dates developed by the [Parole] board, less adjustment for program participation. In no case shall the board schedule require that the primary parole eligibility date for a young adult offender be greater than the primary parole eligibility date required pursuant to this section for the presumptive term for the crime authorized pursuant to N.J.S. 2C:44–1(f).

Consonant with the latter provision of the Parole Act, the Board enacted a regulation setting presumptive primary eligibility dates. Crimes that include aggravated sexual assault and any other first-degree crime (Category B) have a 40–month presumptive eligibility date when the maximum length of the indeterminate term is between 10 and 14 years. *N.J.A.C.* 10A:71–3.3(a). As recently noted by Chief Justice Wilentz in a concurring opinion, not only may there be an issue as to whether the youthful offender option applies to first- and second-degree crimes, but also the legislatively authorized dichotomy has engendered a significant disparity as to initial parole eligibility between state prison and youthful offender sentenced inmates. *See State v. Styker, supra,* 134 *N.J.* at 257–59, 633 *A.*2d 521. However, neither of those issues are raised here, as indeed would be expected, given that youthful offenders are entitled to a considerably more favorable initial parole eligibility date. *Id.* at 257–58, 633 *A.*2d 521.

We do not read *Booker v. New Jersey State Parole Bd.,* 136 *N.J.* 257, 642 *A.*2d 984 (1994), to support defendant's contention that the 197 days of gap time credit be deducted from the 40–month presumptive parole eligibility date rather than the maximum 12–year period of the indeterminate sentence. *Booker,* like its gap time credit predecessor *Richardson v. Nickolopoulos,* 110 *N.J.* 241, 540 *A.*2d 1246 (1988) (*Richardson II* ), applied only to state prison inmates and did not deal with the issue of gap time credit and indeterminate sentences. That notwithstanding, while we agree certain principles of *Booker* and *Richardson II* apply to

indeterminate sentences, we disagree with defendant's analysis of how they apply.

*Richardson II* set the standards for gap time credit. It held the gap time credit does not apply to parole ineligibility terms or the front-end of a sentence, but only to the *base* term or the back-end of a sentence. *Id.* at 254–55, 540 A.2d 1246. How the credit affects the back-end arose in *Booker.* There the Court ruled the Parole Board must compute an inmate's parole eligibility date on the basis of the aggregate sentence as reduced by the gap time credit. *Booker, supra,* 136 *N.J.* at 265, 642 A.2d 984. Overall then, gap time credit reduces the aggregate sentence for purposes of calculating a parole eligibility date.

The Parole Board did just that in this instance. It applied the 197 days of gap time credit to the aggregate 12–year sentence. The credit reduced the aggregate sentence to 11 years 5 months and 15 days. That reduction did not bring defendant's aggregate sentence below the 10 years set in the Category B range so the Board concluded the 40–month initial parole eligibility still applied and not 40 months less the gap time credit.

We find no basis for disturbing that analysis. The Legislature authorized the initial parole date dichotomy between state prison sentenced inmates and youthful offender sentenced inmates. That dichotomy has resulted in a format that favors the latter. The Code, however, makes no distinction for the purpose of applying gap time credit. *Richardson II* and its progeny require only a reduction of the maximum 12–year sentence or the back-end of a sentence. Consequently, as to a youthful offender, only when the aggregate of the sentence is reduced below the lower end of a category range, here 10 years, can gap time credit have an effect on the initial parole eligibility date.

Affirmed.